**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 17, 2011

No. 10-60226

Lyle W. Cayce
Clerk

JAMES E. JENNINGS, JR.,

Plaintiff - Appellee

v.

HOUSTON PATTON, In his individual capacity,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, STEWART, and OWEN, Circuit Judges.

CARL E. STEWART, Circuit Judge:

ON PETITION FOR PANEL REHEARING: The original opinion in this case was issued on March 9, 2011. The petition for panel rehearing is GRANTED to the extent that we withdraw our previous opinion, *Jennings v. Patton*, 635 F.3d 655 (5th Cir. 2011), and replace it with the following. In all other respects, the petition for panel rehearing is DENIED.

**OPINION**

In this action under 42 U.S.C. § 1983, James Jennings sued Judge Houston Patton, a county judge in Mississippi, for allegedly causing Jennings to be prosecuted without probable cause. Judge Patton moved to dismiss, or in the

alternative for summary judgment, arguing in part that he was entitled to judicial immunity and qualified immunity. The district court denied Judge Patton's motion, concluding that genuine issues of material fact precluded summary judgment. This interlocutory appeal followed. Because we conclude that Judge Patton is entitled to qualified immunity, we REVERSE.

I

Judge Patton has at all relevant times been a judge of the County Court of Hinds County in Mississippi. In the early 1990s, Judge Patton presided over a series of disputes between Jennings and Jennings's ex-wife in which he initially awarded Jennings a default judgment of $35,000. When Jennings was later jailed for contempt by the Justice Court of Hinds County, Judge Patton authorized his release. According to Jennings, however, Judge Patton impermissibly conditioned that release on Jennings's agreement to surrender the $35,000 judgment. On the basis of this allegation, in January 1997, Jennings filed a complaint against Judge Patton with the Mississippi Commission on Judicial Performance. Jennings also hired an attorney, J. Keith Shelton, to help him bring a civil rights suit against the judge that raised the same claim.

In March 1997, Shelton contacted Judge Patton to offer the possibility of settling Jennings's as-yet-unfiled suit. After several weeks of negotiation, the parties agreed to the following terms: Jennings would release Judge Patton from any civil claims and inform the judicial commission that his claims had been satisfied, in exchange for Judge Patton's $25,000 payment and reinstatement of the $35,000 award.[1] Unbeknownst to Jennings or Shelton, however, Judge Patton had contacted the district attorney's office to report Shelton's offer, which he considered to be a bribery attempt by the two men. As a result, the district attorney's office had opened an investigation and hired an investigator from the

---

[1] Jennings and Judge Patton dispute the content of these negotiation discussions but that dispute, being immaterial to the legal question presented, is not recounted here.

county sheriff's department, Larry Iles, to assist with its efforts. Iles recorded or overheard several negotiation discussions between Judge Patton, Shelton, and Jennings, including an April 1997 discussion where the three men signed a purported settlement agreement reflecting the above terms. Based on a sworn affidavit signed by Iles, an arrest warrant was issued. Two days later, Jennings and Shelton were arrested.

In August 1997, a Mississippi grand jury returned indictments against both Jennings and Shelton for bribery of a judge. Iles testified before the grand jury that Jennings and Shelton had offered to dismiss their complaint against Judge Patton in exchange for his $25,000 payment and reinstatement of the prior $35,000 judgment.[2] Jennings and Shelton were never tried, however, and in 2005 the district attorney's office moved to remand the cases to the file for lack of prosecutive merit. The Circuit Court of Hinds County granted the motion and remanded the criminal cases with prejudice, effectively dismissing the charges.

Jennings thereafter filed the present action against Judge Patton and the former Hinds County District Attorney, Ed Peters. He claimed that the defendants had violated, and conspired to violate, his rights under the Fourth and Fourteenth Amendments to be free from prosecution without probable cause. Against Judge Patton, he claimed that the defendant

> ha[d] [Jennings] prosecuted without probable cause in that he subjectively knew that he was fabricating the charge against him for the purpose of maliciously prosecuting him.

Jennings explained in additional allegations that Judge Patton had misrepresented the settlement discussions to the district attorney's office—specifically, that Judge Patton had failed to disclose that the reinstatement of the $35,000 judgment was a settlement term that Judge

---

[2] It appears that Judge Patton did not testify at the grand jury proceedings.

No. 10-60226

Patton, not Jennings, had insisted upon. Jennings argued that Judge Patton's misrepresentations to the district attorney's office amounted to the initiation of criminal charges without probable cause.

Judge Patton and Peters moved to dismiss the action, or in the alternative, for summary judgment, arguing in part that they were entitled to absolute immunity and qualified immunity. The district court granted Peters's motion but denied Judge Patton's motion. In the district court's view, Jennings had presented evidence that, if credited, suggested that Judge Patton had misrepresented facts to the district attorney's office and to Iles. Concluding that this factual dispute was material to whether Judge Patton was entitled to either judicial immunity or qualified immunity, the district court denied his motion.

II

A

As a threshold matter, we examine our jurisdiction to review Judge Patton's qualified immunity defense. Jennings challenges our jurisdiction, arguing that Judge Patton appeals only the "genuineness" of the factual dispute that the district court held precluded summary judgment.

In a § 1983 action, defendants can immediately appeal the district court's denial of a motion for summary judgment based on qualified immunity, but only "to the extent that it turns on an issue of law." *Hampton v. Oktibbeha Cnty. Sheriff Dept.*, 480 F.3d 358, 363 (5th Cir. 2007). We "lack jurisdiction to review the genuineness of those factual disputes that precluded summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 341 (5th Cir. 2004). In this case, we consider whether the factual dispute the district court identified is material for purposes of summary judgment. Because our review turns only on this issue of law, we are satisfied of our jurisdiction. We review de novo the materiality of that factual dispute and the district court's conclusions of law. *Hampton*, 480 F.3d at 364.

No. 10-60226

B

The doctrine of qualified immunity protects public officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). We undertake a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.[3]  *Id.* at 815–16 (citing *Saucier v. Katz*, 533 U.S 194, 201 (2001)).

Here, the district court found that Judge Patton's alleged misrepresentation of the settlement discussions, if true, directly affected the district attorney's decision to seek an indictment and the grand jury's decision to return the indictment. On the basis of this finding, the district court concluded that Judge Patton's alleged actions, if true, amounted to a constitutional violation. But the court did not explain the constitutional right that Judge Patton had purportedly violated.

We have held that "causing charges to be filed without probable cause will not without more violate the Constitution." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc). However, "[i]t is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Id.* As we stated in *Castellano*:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a

---

[3] *Pearson* established that we may consider these prongs in any order.  *See id.* at 818.

No. 10-60226

case is further pursued. Such claims of lost constitutional rights are
for violation of rights locatable in constitutional text, and some such
claims may be made under 42 U.S.C. § 1983.

*Id.* at 953–54.

Jennings appears to make such a claim under the Fourth Amendment by arguing that Judge Patton's misrepresentations caused the warrant for Jennings's arrest to be issued without probable cause. Nevertheless, Jennings fails to raise a fact issue as to lack of probable cause because of the independent intermediary doctrine. Under that doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation" for the Fourth Amendment violation. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted). However, this insulation is not absolute. "[T]he chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* (citation and internal quotation marks omitted).

Under the circumstances of this case, Jennings has not shown how Judge Patton's actions tainted the deliberations of the magistrate who issued the arrest warrant or the grand jury that returned the indictment. The investigator for the sheriff's department, Larry Iles, independently concluded that Jennings was attempting to bribe Judge Patton and signed the affidavit for Jennings's arrest. We have been "unwilling . . . to extend [§ 1983] liability . . . beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application." *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005). In so holding, we stated:

> Although issues of fact may exist as to the roles that [defendants] played in the investigation, and in providing some of the information to [the affiant], these issues of fact are not material to

No. 10-60226

the [claim for causing a warrant to be issued without probable cause] because none of the evidence suggests that [defendants] prepared or presented the warrant or were fully responsible for its preparation or presentation.

*Id.*; *see also Hampton*, 480 F.3d at 364–65 (granting qualified immunity to defendants who were neither the affiant nor the person who actually prepared the warrant application). Furthermore, it appears that Judge Patton did not testify before the grand jury; Iles was the one who testified before the grand jury to secure Jennings's indictment.

In light of these circumstances, Judge Patton is entitled to qualified immunity. As we resolve this appeal on grounds of qualified immunity, we do not address whether Judge Patton is entitled to judicial immunity.

III

For the reasons stated above, we conclude that Judge Patton is entitled to qualified immunity and REVERSE the district court's denial of summary judgment.