**Michael David MELTON,**
**Plaintiff–Appellee**

v.

**Kelly D. PHILLIPS, Defendant–**
**Appellant**

No. 15–10604

United States Court of Appeals,
Fifth Circuit.

Filed September 14, 2016

504

Jason Andrew Duff, Law Office of Jason Duff, Greenville, TX, for Plaintiff–Appellee.

Robert Scott Davis, Esq., Flowers Davis, P.L.L.C., Tyler, TX, for Defendant–Appellant.

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

The plaintiff, Michael David Melton, spent sixteen days in county jail in connection with an assault he did not commit. The only thing that linked him to this assault was the fact that he has the same first and last name as the person identified by the victim as the actual assailant. After his release, the plaintiff filed a lawsuit under 42 U.S.C. § 1983 against Kelly Phillips, a sheriff's office deputy, alleging that Phillips intentionally or recklessly misidentified him as the assailant in an offense report that he prepared, thereby leading to the plaintiff's arrest without probable cause in violation of the Fourth Amendment. The district court denied Phillips's qualified immunity-based motion for summary judgment, and Phillips now appeals, principally arguing that he cannot be liable for a Fourth Amendment violation because he neither prepared nor signed the affidavit in support of an arrest warrant. After carefully considering the parties' arguments, we affirm the district court's order in part and dismiss the appeal in part.

## I

In June 2009, Phillips, then a deputy with the Hunt County Sheriff's Office, interviewed the victim of an assault. The victim identified the attacker as his wife's boyfriend at the time, a man named Michael Melton, apparently without providing the assailant's middle name.[1] Phillips then prepared an offense report and submitted it to the Sheriff's Office. The report specifically identified the plaintiff, Michael David Melton, as the suspected assailant.[2] After he submitted his report, Phillips had no further involvement with the case.

In July 2010, the state prosecutor filed a criminal complaint against the plaintiff, charging him with the assault. The complaint expressly stated that it was based upon Phillips's offense report and provided no other basis for the information contained therein. Shortly thereafter, a Hunt County judge issued a warrant for the plaintiff's arrest, identifying him by his first and last name and by his address, which was included in Phillips's report. The plaintiff was arrested in May 2012 and held in county jail for sixteen days before he was released on bond. In August 2012, the charge against the plaintiff was dismissed. The plaintiff filed the instant suit in state court against multiple defendants, asserting, *inter alia*, Fourth Amendment violations, and the suit was subsequently removed to federal court. As to Phillips, the plaintiff alleged that he intentionally or recklessly misidentified him as the assailant in the offense report, thereby leading to his arrest without probable cause.

In support of his allegations, the plaintiff submitted an affidavit from a former Sheriff's Office employee, Brian Alford, who opined that Phillips likely used a computer database, the "Personal Identification History through net data" or "PID," to identify the plaintiff as the suspected assailant. Specifically, Alford concluded that Phillips likely entered the name "Michael Melton" into the database and conducted no further investigation as to whether the PID-generated result matched the person identified by the victim.

Phillips moved for summary judgment, asserting qualified immunity. Relevant to the instant appeal, the district court denied summary judgment on the plaintiff's Fourth Amendment claims. First, the dis-

---

1. According to the plaintiff, the assailant's full name is Michael Glenn Melton.

2. Besides his full name, Phillips's report identified the plaintiff by his address, driver's license number, age, height, and other characteristics.

trict court cited *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *Hart v. O'Brien*, 127 F.3d 424 (5th Cir. 1997), in rejecting Phillips's argument that he cannot be liable for the claimed Fourth Amendment violations because he neither signed nor drafted the affidavit in support of a warrant. Second, the district court found a genuine dispute of fact regarding whether Phillips was reckless in identifying the plaintiff in his offense report.

On appeal, Phillips contends that the district court should have followed another Fifth Circuit case, *Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005), and subsequent cases that applied *Michalik*. Pursuant to those cases, Phillips claims, an officer who neither signed nor prepared the affidavit is not liable for Fourth Amendment violations. In the alternative, Phillips argues that the district court erred in finding a genuine issue of fact regarding his alleged recklessness. Finally, he argues that the independent intermediary doctrine forecloses the plaintiff's claims.

## II

■ "The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 408 (5th Cir. 2009) (citation and internal quotation marks omitted). "Accordingly, we lack jurisdiction to review the genuineness of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the materiality of the factual issues." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (citation and internal quotation marks omitted). We review the district court's conclusions regarding the materiality of the facts de novo, *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999),

"consider[ing] only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment," *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). "Where factual disputes exist ... we accept the plaintiffs' version of the facts as true." *Id.*

## III

### A

■ Phillips argues that, under our precedent, an officer like him, who neither signed nor prepared the affidavit in support of a warrant, is not liable for Fourth Amendment violations. Because this claim turns on an issue of law, we have jurisdiction to consider it. *See Lytle*, 560 F.3d at 408.

■ In *Franks v. Delaware*, the Supreme Court considered whether criminal defendants ever have a right to challenge the veracity of factual statements made in an affidavit supporting a search warrant. 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Answering affirmatively, the Court held that the exclusionary rule mandates the exclusion of evidence that was seized pursuant to a search warrant if the defendant establishes that the affiant, "knowingly and intentionally, or with reckless disregard for the truth," included a false statement in the warrant affidavit that was necessary to the finding of probable cause. *Id.* at 155–56, 98 S.Ct. 2674. While *Franks* dealt with the suppression of evidence in criminal proceedings, we have read it to establish, in the context of § 1983 claims asserting Fourth Amendment violations, "that an officer is liable for swearing to false information in an affidavit in support of a search warrant, provided that: (1) the affiant knew the information was false or [acted with] reck-

less disregard for the truth; and (2) the warrant would not establish probable cause without the false information." *Hart v. O'Brien*, 127 F.3d 424, 442 (5th Cir. 1997) (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674 (1978)). Taken at face value, *Franks* would suggest that only officers who sign a warrant affidavit or otherwise request a warrant under oath may be liable for Fourth Amendment violations due to their deliberate or reckless misrepresentations. *Hart*, 127 F.3d at 448 (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674).

However, in *Hart v. O'Brien*, we held that *Franks* liability may extend to government officials who are not the affiants. *Hart*, 127 F.3d at 448–49. Relevant to the instant appeal, Hart sued an assistant county attorney, Starnes, for Fourth Amendment violations under § 1983. *Id.* at 434. Starnes, along with a state officer, drafted an affidavit in support of a search and arrest warrant relating to Hart. *Id.* at 432. Hart alleged that Starnes inserted false statements into the affidavit, either intentionally or with reckless disregard for the truth. *Id.* Rejecting any contention that Starnes could not be liable for Fourth Amendment violations because he did not sign the affidavit, we explained that *Franks* "left open the possibility that a search or arrest violates the Fourth Amendment where the affiant relies in good faith on deliberate or reckless misstatements by another government official." *Id.* at 448 (citing *Franks*, 438 U.S. at 164 n.6, 98 S.Ct. 2674). After considering several sister circuits' holdings that deliberate or reckless misrepresentations by non-affiant government officials may form the basis for *Franks* claims, we concluded:

> We agree with the reasoning of these circuit courts.... The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants. A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.

*Id.* at 449.

■ While *Hart* involved a government official who actually participated in drafting the affidavit, *see* 127 F.3d at 432, its holding was not so confined. Rather than say that an officer violates the Fourth Amendment when he recklessly drafts or signs an affidavit that includes false information, we held that a "governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in [the] affidavit." *Hart*, 127 F.3d at 448; *accord United States v. Brown*, 298 F.3d 392, 408 & n.9 (5th Cir. 2002) (Dennis, J., concurring) ("[A] defendant is entitled to a *Franks* hearing upon making a ... showing that a governmental official deliberately or recklessly caused facts that preclude a finding of probable cause to be omitted from a warrant affidavit."). Indeed, we expressly relied upon the Supreme Court's statement in *Franks* that police cannot " 'insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity.' " *Hart*, 127 F.3d at 448 (quoting *Franks*, 438 U.S. at 164 n.6, 98 S.Ct. 2674). It would therefore have made very little sense for us to sanction the insulation of officer misstatements merely by having another officer draft an affidavit that includes those misstatements.

■ Moreover, our holding in *Hart* relied on several cases in which our sister circuits applied *Franks* to government officials who neither signed nor drafted the affidavits. *See Hart*, 127 F.3d at 448 (citing *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) (*Franks* applies to actions

of investigator who neither signed nor drafted the affidavit); *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (deliberate or reckless omission by informant-government agent can serve as grounds for *Franks* suppression); *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988) (same); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984) (*Franks* applies to "government agent [who] deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit")). Notably, we also cited *Hale v. Fish*, in which this court applied the *Franks* test to an officer "who did not sign or draft the affidavit but whose presence at [the] time of [the] warrant tended to influence [the] judge issuing [the] warrant." *Hart*, 127 F.3d at 448 (citing *Hale v. Fish*, 899 F.2d 390, 401 (5th Cir. 1990)). In this light, it is clear that, under *Hart*, the fact that a government official did not sign or draft the affidavit in support of a warrant does not preclude his or her liability for *Franks* violations.

Phillips points to other cases in which, he claims, we have held that officers are not liable for Fourth Amendment violations under *Franks* if they neither sign nor draft the affidavit in support of a warrant. First and foremost, he relies on *Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005). In *Michalik*, we reversed a district court's denial of qualified immunity as to two officers who were involved in procuring a warrant but did not sign or prepare the affidavit in support thereof. *Id.* at 261. The plaintiffs there brought claims under *Malley v. Briggs*, which concerns warrant applications that, on their face, "fail[ ] to establish probable cause." 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see Michalik*, 422 F.3d at 258. Notably, we expressly stated that those plaintiffs did not have a claim under *Franks* because they had not alleged any false statement in

the warrant application attributable to the defendants. *Michalik*, 422 F.3d at 258. Accordingly, while noting the *Franks/Hart* rule that an officer may be liable for making false statements resulting in the issuance of a warrant without probable cause "regardless of whether he signed the application or was present before the judge," *see id.* at 258 n.5, we moved on to analyze whether *Malley* liability also extends to non-affiant officers. *See id.* at 258–61. In reversing the district court's denial of qualified immunity, we held that liability under *Malley* is limited to "the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application," *Michalik*, 422 F.3d at 262, explaining that an officer who "actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared . . . is in a position to see the whole picture . . . and thus fully to assess probable cause questions." *Id.* at 261.

*Michalik* is plainly inapplicable here; it did not involve *Franks* claims, and its own distinction between *Franks* and *Malley* and its separate analysis for the scope of *Malley* liability establish that its holding does not encompass *Franks* claims. *See Michalik*, 422 F.3d at 258–61 & n.5. Moreover, the reasoning supporting *Michalik's* holding as to *Malley* liability does not apply to *Franks* claims. A government official who merely provides information that leads police to seek a warrant is not necessarily in a position to "fully assess probable cause questions" and therefore he or she does not bear liability under *Malley*. *See Michalik*, 422 F.3d at 261. In contrast, an officer who deliberately or recklessly provides false or misleading information for use in an affidavit in support of a warrant is certainly in a position to fully assess his own conduct, which forms the entire basis for the *Franks* claim.

Conceding that *Michalik*'s holding did not encompass *Franks* claims, Phillips points to *Hampton v. Oktibbeha County Sheriff Department*, 480 F.3d 358, 365 (5th Cir. 2007) and *Jennings v. Patton*, 644 F.3d 297, 298–99 (5th Cir. 2011). He contends that these cases have extended *Michalik*'s holding to *Franks* claims. Indeed, those two cases involved *Franks*-type misrepresentation claims and applied *Michalik* in granting qualified immunity to government officials who neither signed nor drafted warrant applications.[3] *See Hampton*, 480 F.3d at 365; *Jennings*, 644 F.3d at 298-99.

■■ While we agree with Phillips's construction of *Hampton* and *Jennings*, these cases' additional limitation of the scope of *Franks* liability conflicts with *Hart*'s clear holding that officers may be liable for Fourth Amendment violations if they "provide false information for use in [the] affidavit." *Hart*, 127 F.3d at 448. Neither *Hampton* nor *Jennings* even mentions *Franks* or *Hart* let alone attempts to distinguish *Hart* or construe its holding narrowly. *See Hampton*, 480 F.3d at 364–65; *Jennings*, 644 F.3d at 298–99. Where, as here, our prior decisions conflict, we must follow the earlier opinion. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014). Because *Hart* predates both *Hampton* and *Jennings*, *Hart*'s holding

applies: a government official who intentionally or recklessly provides false, material information for use in an affidavit in support of a warrant may be liable under *Franks*. *See Hart*, 127 F.3d at 448. Accordingly, we affirm the district court's ruling that, under these circumstances, Phillips may be liable for Fourth Amendment violations under *Franks* even though he neither signed nor drafted the affidavit in support of the warrant for the plaintiff's arrest.

**B**

In denying Phillips's motion for summary judgment, the district court found that there was a genuine dispute of fact as to whether Phillips was reckless in identifying the plaintiff as the suspected assailant. On appeal, Phillips argues that the plaintiff provided no evidence that he acted with reckless disregard for the truth.

■■ "To prove reckless disregard for the truth, [a plaintiff] must present evidence that [the defendant] 'in fact entertained serious doubts as to the truth' of the [relevant] statement." *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Whether a defendant in fact entertained serious doubts as to the

---

**3.** In *Hampton*, a plaintiff sued four officers for Fourth Amendment violations under § 1983, claiming that the officers conspired to submit false information to obtain a warrant for his arrest. 480 F.3d at 362. The *Hampton* court denied qualified immunity to the single officer who actually prepared the affidavit in support of a warrant and presented it to the judge. *Id.* at 364. However, citing *Michalik*, the court granted qualified immunity to the other officers because they neither signed the affidavit nor prepared the warrant application. *Hampton*, 480 F.3d at 365 (citing *Michalik*, 422 F.3d at 261).

In *Jennings*, a county judge contacted the district attorney's office to report what he con-

sidered was a bribery attempt by the plaintiff. 644 F.3d at 298–99. Criminal charges were subsequently brought against the plaintiff but were ultimately dismissed. *Id.* at 299. The plaintiff sued the judge under § 1983, claiming that the judge violated his Fourth Amendment rights by intentionally misrepresenting his conduct, thus amounting to the initiation of criminal charges without probable cause. *Id.* Similar to *Hampton*, the *Jennings* court applied *Michalik* to conclude that the judge was entitled to qualified immunity because he neither signed the affidavit in support of an arrest warrant nor testified before the grand jury. *Jennings*, 644 F.3d at 301.

truth is necessarily a fact question. *Cf. Smith v. Brenoettsy*, 158 F.3d 908, 913 (5th Cir. 1998) (whether a prison official actually drew the inference that there was a substantial risk of serious harm to the plaintiff is "a factual question that a court of appeals lacks jurisdiction to hear on interlocutory appeal").

As discussed above, in reviewing an interlocutory appeal from the denial of a motion for summary judgment qualified immunity, we lack jurisdiction to review the genuineness of a fact issue. *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). Accordingly, we lack jurisdiction to review the district court's finding of a genuine fact dispute as to Phillips's recklessness. *See id.*

### C

 Finally, Phillips argues that the independent intermediary doctrine precludes his liability in this case. Under the independent intermediary doctrine, "even an officer who acted with malice in procuring the warrant . . . will not be liable if the facts supporting the warrant . . . are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) (citing *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). However, this doctrine applies only when all of the facts are presented and the intermediary's decision is truly independent of the wrongfulness of the defendant's conduct: "Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).

Phillips claims that the Hunt County judge's decision to issue a warrant for the plaintiff's arrest breaks the chain of causa-tion between Phillips's actions and the alleged constitutional violation. He also asserts that a negligent act is not sufficient to taint the deliberations of the intermediary. Phillips's arguments ignore the plaintiff's contention that Phillips misrepresented the facts, intentionally or recklessly, by falsely identifying the plaintiff as the suspected assailant and thus tainted the county judge's decision. Indeed, the district court found a genuine fact dispute regarding this factual contention. Assuming the plaintiff's factual assertions are true—and we must so assume, *see Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)—the independent intermediary doctrine does not apply to shield Phillips from liability, *see Hand*, 838 F.2d at 1428.

### IV

For the forgoing reasons, we dismiss Phillips's appeal to the extent he challenges the district court's finding of genuine disputes of fact. We affirm in all other respects.

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

The majority opinion holds—contrary to our binding precedent—that a law enforcement officer who did not participate in the preparation or the execution of a warrant can be liable under 42 U.S.C. § 1983 when the wrong person is arrested. I respectfully dissent.

### I.

In June 2009, Deputy Kelly Phillips interviewed an assault victim and wrote a report identifying the assailant as "Michael David Melton." The report also contained what Deputy Phillips believed to be the assailant's address, driver's license number, age, and physical characteristics. This was Deputy Phillips's sole involvement in

the chain of events leading to Melton's May 2012 arrest and detention. After Deputy Phillips submitted his report, Investigator Jeff Haines began investigating the assault. A year later, Haines obtained a sworn affidavit from the victim identifying his assailant as "Mike Melton." The Hunt County Attorney's Office then brought charges against "Michael Melton." The assailant's first and last names are the only identifying information contained in the complaint, and their accuracy is undisputed. Four days after the complaint was filed, a Hunt County judge issued a capias warrant for the arrest of "Michael Melton." This warrant contained additional identifying information, including a social security number that did not appear in Deputy Phillips's report. Two years after the judge issued the warrant, Plaintiff Michael David Melton was arrested and detained. It is undisputed that Deputy Phillips had nothing to do with any of these actions by Haines, the victim, the Hunt County Attorney's Office, or the Hunt County judge.

## II.

The majority opinion relies exclusively on *Hart v. O'Brien*, 127 F.3d 424 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), and specifically disavows two other published opinions to reach its conclusion that Deputy Phillips is not entitled to qualified immunity. In so doing, the majority opinion stretches *Hart* to the point of breaking it and thereby unnecessarily concludes that it conflicts with other on-point, binding precedent. *Hart* is simply inapplicable on these facts. We stated in *Hart* that, notwithstanding the doctrine of qualified immunity, "[a]

governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit." *Id.* at 448–49. Thus, *Hart* denies qualified immunity to an officer who provides false information if: (1) the information is provided for use in an affidavit in support of a warrant; (2) the officer acted deliberately or recklessly with regard to the truth or falsity of the information; and (3) the information is material. This case does not meet any of these requirements and does not fall within the scope of *Hart*.

To begin, Deputy Phillips's actions in this case are not subject to liability under *Hart* because Deputy Phillips's identification of the assailant as "Michael David Melton" was not information provided "for use in an affidavit in support of a [ ] warrant." *Id.* The incorrect information in *Hart* was provided by a prosecutor as he assisted in drafting the affidavit. *Id.* at 433. The incorrect information in this case was provided by Deputy Phillips a year before additional investigation by Haines, a sworn statement by the victim, and a decision to press charges by the Hunt County Attorney's Office led to the drafting of a complaint that contained only accurate identifying information. In light of the attenuated connection between Deputy Phillips's identification of the assailant and the application for a warrant, Deputy Phillips's statement was not a statement provided for use in an affidavit in support of a warrant and therefore is not within the scope of *Hart*.

Moreover, the record in this case contains no actual evidence that Deputy Phillips acted recklessly in identifying the assailant as "Michael David Melton."[1]

<hr>

1. Nor does the record provide any support for a finding that Deputy Phillips deliberately misidentified the assailant.

Recklessness in this context requires proof that the defendant "'in fact entertained serious doubts as to the truth' of the statement." *Id.* at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). The district court's finding of a dispute regarding recklessness relied on an affidavit by a peace officer who, without personal knowledge of the matter, speculated that Deputy Phillips used the middle name "David" in his report because he found it in a local police database using the first and last names of the assailant without any other identifiers. The affidavit does not raise a fact issue as to whether Deputy Phillips himself entertained serious doubts as to the truth of his report. Thus, the affidavit is not evidence of recklessness as defined in this context. Moreover, Melton's counsel in a 28(j) letter acknowledged that Melton did not have a criminal record in the local police database discussed in the affidavit, undermining any evidentiary value the affidavit may have had on this point.[2]

Even assuming *arguendo* that the affidavit is some evidence that Deputy Phillips acted recklessly by including the middle name "David" in his report, reliance on *Hart* is misplaced because the incorrect information that Deputy Phillips provided was not material to a determination of probable cause. In *Hart*, officers saw vehicles registered to Peggy Hart on a property being used to grow marijuana, incorrectly assumed that this was the same Peggy Hart who was the wife of a known marijuana cultivator, and obtained a war-

rant for her arrest using an affidavit that identified her as such. *Id.* at 432–33. Whether the Peggy Hart who is to be arrested for cultivating marijuana has been correctly identified as the wife of a known marijuana cultivator is material to an evaluation of probable cause. But whether the Michael Melton who is to be arrested for assault has been correctly identified as having the middle name of David is not material. If Deputy Phillips had omitted the name "David" from his report, the judge would have been no less likely to have issued the arrest warrant. Thus, this case fails to meet the requirements of *Hart*.[3]

## III.

Importantly, the majority opinion specifically disclaims published Fifth Circuit case law in reaching its contrary conclusion. In *Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005), we expressly refused to abrogate the qualified immunity of law enforcement officers whose misstatements led to arrest and detention except in the case of officers who either signed or drafted a warrant application. *Id.* at 254–55 ("We hold that [appellants] are entitled to qualified immunity for claims based on the procurement of the warrant because neither prepared, presented, nor signed the application for the search warrant."). We used this rule as a limit on *Franks*[4] liability in *Hampton v. Oktibbeha County Sheriff Department*, 480 F.3d 358, 365 (5th Cir. 2007) (reversing district court's denial of

---

2. Deputy Phillips has provided an affidavit stating that the identification of Melton in his report was "based solely on what I was told by [the victim]." Apart from the affidavit that is discredited by Melton's 28(j) letter, Deputy Phillips's affidavit is uncontroverted.

3. Moreover, *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990) is inapposite. That decision held

that an officer who was present at the warrant hearing and lent credibility to the affidavit due to the officer's "prior working relationship" with the presiding judge could be held liable as a "conspirator." *Id.* at 401.

4. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

qualified immunity for three officers who may have conspired to submit incorrect information in a warrant application because they did not sign or draft the application) and *Jennings v. Patton*, 644 F.3d 297, 301 (5th Cir. 2011) (reversing district court's denial of qualified immunity for a judge assumed on summary judgment to have caused a man to be arrested for bribery by misrepresenting settlement discussions to a district attorney's office). Because Melton's claim is based on *Franks* liability, *Hampton* and *Jennings* control. As the majority opinion itself recognizes, these cases, if controlling, preclude the result reached by the majority opinion because it is undisputed that Deputy Phillips did not sign or draft the warrant application in this case.

The majority opinion invokes the rule of orderliness to avoid the conclusion that *Hampton* and *Jennings* control. It argues that *Hart* conflicts with and predates *Hampton* and *Jennings*. However, these cases do not conflict. As discussed above, *Hart* held that a governmental official could be liable under *Franks* when he helped to draft an affidavit in support of a warrant and provided incorrect information for use in that affidavit. *Hampton* and *Jennings* held that a governmental official could not be liable under *Franks* when he neither signed nor drafted an affidavit in support of a warrant. Thus, all three cases agree that, as *Hart* puts it, an officer cannot be liable under *Franks* without providing incorrect information "for use in an affidavit in support of a [ ] warrant." 127 F.3d at 448–49. The rule of orderliness is not offended by either *Hampton* or *Jennings*.

## IV.

Because our published, existing case law provides that a law enforcement officer is entitled to qualified immunity where he did not prepare or assist in the preparation of an erroneous arrest warrant, I respectfully dissent.