JAMES L. DENNIS, Circuit Judge, joined by GRAVES, Circuit Judge, dissenting: The evidence of the nonmovant and the justifiable inferences drawn in his favor by the district court—which we may not second-guess at this interlocutory stage—establish a genuine dispute as to whether Officer Phillips acted with reckless disregard for the truth in falsely identifying the plaintiff as the perpetrator in his official report of a violent assault, resulting in the plaintiffs arrest without probable cause. The majority opinion errs in reversing the district court’s denial of qualified immunity and summary judgment to Phillips and causes injustice to the plaintiff, who should be allowed to proceed with his claim, and to future civil plaintiffs and criminal defendants, who will be deprived of a legal remedy for similar violations of their constitutional rights. What makes this case even more significant are the legal and procedural maneuvers this court is employing in order to shield a reckless officer, bending over backwards to revive bad decisions that violated our rule of orderliness and raising arguments and defenses that the appellant did not raise. I respectfully dissent. I In June 2009, the defendant, Kelly Phillips, then a deputy with the Hunt County, Texas, Sheriffs Office, was dispatched to a hospital in Greenville, Texas, to interview the victim of an assault. The victim told Phillips that the assailant was a man he knew named “Michael Melton.” There is no dispute that the assailant was not the plaintiff, Michael David Melton, but a different man, Michael Glenn Melton, who apparently was romantically involved with the victim’s estranged wife at the time of the assault. Phillips shortly thereafter prepared an offense report in which he specifically identified the plaintiff, Michael David Melton, as the assailant, and provided his middle name, age, height, hair color, and eye color. As the district court noted, Phillips did not explain how he came to identify the plaintiff, as opposed to the true assailant, as the perpetrator in his report.[1] According to the plaintiffs expert witness, the only possible way Phillips could have identified the plaintiff falsely as the assailant in his offense report was by entering the name “Michael Melton” into a computer database, the “Personal Identification History through net data” or “PID,” without conducting any investigation as to whether the PID-generated result matched the person identified by the victim. Phillips forwarded his report to the Criminal Investigation Division of the Hunt County Sheriffs Office. In April 2010, another officer obtained a sworn affidavit from the victim, who again identified his assailant only as “Mike Melton,” his estranged wife’s boyfriend. In July 2010, the state prosecutor filed a criminal complaint against the plaintiff, charging him with the assault. The complaint expressly stated that it was “based upon the observations of K. Phillips, a peace officer, obtained by reviewing said officer’s report,” and it provided no other basis for the information contained therein. Shortly thereafter, a Hunt County judge issued a warrant for the plaintiffs arrest. The plaintiff was arrested in May 2012 and held in county jail for sixteen days before he was released on bond. In August 2012, the charge against the plaintiff was dismissed. The plaintiff sued Phillips for violation of his Fourth Amendment rights, alleging that Phillips intentionally or with reckless disregard for the truth misidentified him as the assailant in his offense report, thereby leading to his arrest without probable cause. Phillips moved for summary judgment, asserting qualified immunity. The district court denied summary judgment on the plaintiffs Fourth Amendment claims, finding a genuine dispute ol‘ fact regarding whether Phillips was reckless in identifying the plaintiff in his offense report. II A This court has recognized two different kinds of claims against government agents for alleged Fourth Amendment violations, in connection with a search or arrest warrant: (1) claims under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), for which the agent may be liable if he “makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being, issued .without, probable cause,” Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (discussing Franks, 438 U.S. at 155-56, 98 S.Ct. 2674); and (2) claims under Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), for which the agent. may be liable if. he “fil[es] an application for an arrest warrant without probable cause”' and “a reasonable well-trained officer ... would have known that [the] affidavit failed to establish probable cause,” Michalik, 422 F.3d at 259-60 (citations and internal quotation marks omitted). As is apparent, these two kinds of claims involve very different legal theories, and, our controlling caselaw properly reflects our understanding of those differences. In Hart v. O’Brien, 127 F.3d 424, 448-49 (5th. Cir. 1997), this court considered the scope of a government agent’s liability for Franks claims and held, “A governmental official .violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a ... warrant,” And in Michalik, we considered the scope of a government agent’s liability for Malley claims. We held that, in that context, only the “affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application” may be liable for-seeking a warrant without probable cause. Michalik, 422 F.3d at 261. These different rules make sense. A government official who merely provides information that is later included in a warrant application is not in a position to “see the whole picture” and thus to fully “assess probable Cause questions” relevant to Malléy claims of facially insufficient warrant applications. See Michalik, 422 F.3d at 261. By contrast, an officer who “deliberately or lucklessly provides false, material information for use in an affidavit” is certainly in a position to fully assess his own conduct, which forms the entire basis for Franks claims of material misrepresentations in warrant applications. See Hart, 127 F.3d at 448-49. At issue in this case is a Franks claim alleging a Fourth Amendment violation resulting from material misrepresentations in a warrant affidavit; thus, as the prudent reader will easily recognize, this claim is controlled by Hart /Franks, and the Michalik/Mailey rule is inapplicable. B In Hampton v. Oktibbeha County Sheriff’s Department, 480 F.3d 358, 365 (5th Cir. 2007), and Jennings v. Patton, 644 F.3d 297, 301 (5th Cir. 2011), this court confused the two theories described above, and, in conflict with our earlier holding in Hart, erroneously applied the Michalik /Mailey rule to cases involving Franks misrepresentation claims. And it. did- so without ever mentioning Franks or Hart, Under our rule of orderliness, when such conflict occurs, the earlier precedent controls and subsequent, inconsistent cases are disregarded. See, e.g., United States v. Puckett, 505 F.3d 377, 385 (5th Cir. 2007) (“A handful of this court’s cases, unfortunately, are inconsistent” with earlier precedent, and they are therefore “not controlling”). The en banc court now cements our confusion and error in Hampton and Jennings into law. In an attempt to portray Hampton and Jennings as consistent with Hart, the majority opinion misrepresents those cases and their holdings. Under Hampton and Jennings, a government official who deliberately provides false, material information for use in an affidavit does not violate the Fourth Amendment if she is not the affiant and does not actually prepare the warrant. See Hampton, 480 F.3d at 365; Jennings, 644 F.3d at 301. This rule is plainly inconsistent with our earlier holding in Hart. In Hampton, the court “accepted the plaintiffs version of the facts, namely that the officers ‘conspired to submit false and incomplete information in order to secure a warrant for the arrest of [Hampton].’ ” 480 F.3d at 364 (alteration in original); Nevertheless, the Hampton court held that these officials could not be held liable because the plaintiff did not allege .that either of them “was the affiant officer or the ‘officer who actually prepare[d] the warrant application with knowledge that a warrant would be based solely on the document prepared.’ ” 480 F.3d at 365 (quoting Michalik, 422 F.3d at 261). Jennings offers the same “actual preparation” requirement. In granting qualified immunity to the relevant government official there, the court quoted the following language from Michalik: Although issues of fact may exist as to the roles that [defendants] played in the investigation, and in providing some of the information to [the affiant], these issues of fact are not material to the [claim for causing a warrant to be issued without probable cause] because none of the evidence suggests that [defendants] prepared or presented the warrant or were fully responsible for its preparation or presentation. Jennings, 644 F.3d at 301 (emphasis added) (alteration in original) (quoting Michalik, 422 F.3d at 261). The Jennings court went on to cite Hampton and describe it as “granting qualified immunity to defendants who were' neither the affiant nor the person who actually prepared the warrant application.” Jennings, 644 F.3d at 301 (emphasis added) (citing Hampton, 480 F.3d at 364-65). This, too, is plainly inconsistent with Hart. There is no way to explain how the language of these two cases and their reliance on Michalik could be consistent with Hart, So the majority opinion does not quote or otherwise discuss their language and does not even mention their reliance on Michalik. The majority opinion’s attempt to argue that Hampton and Jennings can be harmonized with Hart amounts to an endeavor to square the circle. C The majority opinion’s holding that an officer who makes a deliberate or reckless misrepresentation can only be held liable if he “assisted in the preparation of, or otherwise presented or signed a warrant application” is unsound and, unsurprisingly, is not the law in any other circuit.[2] See, e.g., United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (Fourth Amendment violated by false statements “made not only by the affiant but also [by] statements made by other government employees ... insofar as such statements were relied upon by the affiant in making the affidavit”); United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992) (“[W]e join the Third and Seventh Circuits in holding that misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a Franks hearing.”). Cf. United States v. Leon, 468 U.S. 897, 923 n.24, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (admonishing that in applying the good-faith exception “[i]t is necessary to consider the objective reasonableness ... of the officers who originally obtained [the warrant] or who provided information material to the probable-cause determination”). The following cases further illustrate the majority opinion’s departure from the holdings of our sister circuits. In United States v. Calisto, 838 F.2d 711, 712 (3d Cir. 1988), an officer relayed information to a second officer at a second agency. The first officer’s “reason for relaying the information to [the second officer] ... was his belief that it would aid [that officer] in his investigation.” Id. (emphasis added). The first officer requested not to be revealed as the source of the information. Id. The second officer then relayed the information to a third officer at a third agency, who then relayed information to a fourth officer at a fourth agency, who then drafted and signed a warrant application based on the information. In applying Franks, the Third Circuit considered the information provided, and omitted, by all four agents, ultimately concluding that any misrepresentation was not material. See 838 F.2d at 714-15 & n.2. In United States v. Davis, 471 F.3d 938, 942 (8th Cir. 2006), an officer who conducted a protective sweep relayed false information to another officer who participated ‘in the sweep, and the latter officer relayed that information to the affiant. Nothing in the facts or the court’s discussion suggests that the misrepresenting officer was “involved in the preparation” of the warrant affidavit, and the court concluded that his misrepresentation was reckless. Id. at 946. The court stated, “The fact that the affiant ... was not aware [of the falsity] does not change the result under Franks, nor does the fact that [the affiant’s] source of information ... was also unaware of the truth. [The recklessly misrepresenting officer’s] statement cannot be insulated from a Franks challenge simply because it was relayed through two officers who were both unaware of the truth.” Id. at 947 n.6. In United States v. Lakoskey, 462 F.3d 965 (8th Cir. 2006), the court considered alleged misrepresentations by an Arizona-based postal inspector, Hirose, in an email to a Minnesota-based inspector, Nichols. The email informed Nichols that a Minnesota resident was apparently involved in a drug trafficking operation using the mails. Id. at 970. Only after this email was received, Nichols launched an investigation, which included multiple dog sniffs, and, over two weeks later, applied for and obtained a search warrant based in part on the information relayed in the email. Id. at 970-71. Nothing in the facts or in the court’s discussion suggests that Hirose was “involved in the preparation” of the warrant affidavit or intended for the information to be used in an affidavit. Nonetheless, the court recognized that misrepresentations by Hirose could give rise to a Franks claim, see id. at 978, though it ultimately concluded that the misrepresentations were not material, id. Our sister circuits’ caselaw reflects a common-sense understanding: when an officer, acting with reckless disregard for the truth, includes false, material information in an official report for further official use, leading to an unlawful search or arrest of an innocent person, there is no justification to insulate him from liability. A reasonable officer can certainly foresee that such actions could lead to an unlawful search or arrest, as information relayed in law enforcement agents’ reports routinely end up as support for warrant applications even if the reports are not expressly designed exclusively for that use. See, e.g., Calisto, 838 F.2d at 712; Davis, 471 F.3d at 942; Lakoskey, 462 F.3d at 970-71. Nor does the passage of time between the false report and the warrant application justify ignoring that officer’s conduct. Whether the false information is used within a week or a year is not within the misrepresenting officer’s control—the majority opinion offers no basis for the proposition that the existence of a constitutional violation depends on the passage of time between the reckless misrepresentation and the resulting unlawful arrest. There is thus no justification for the anomalous shield that this court has now created. It is important to emphasize that the majority opinion’s erroneous holding that only an officer who actually participates in preparing the warrant affidavit can violate the Fourth Amendment through his reckless or intentional misrepresentations is not limited to civil cases; that narrow reading of the Fourth Amendment will limit criminal defendants’ ability to challenge search warrants that are premised on fraudulent misrepresentations. Say, for example, that a patrol officer intentionally alters an assault victim’s statement in his police report with the intent to lead detectives to an individual the officer believes committed the crime. And say that this misrepresentation is later included in a search warrant, leading to the recovery of evidence that this individual possessed small amounts of marijuana in his home. Under the majority opinion’s holding, that individual would not be able to challenge his search warrant in his ensuing prosecution for possession of a controlled substance simply because the culprit officer did not “participate” in the preparation of the warrant affidavit, notwithstanding his intentional misrepresentation. Such a rule is untenable. Ill In addition to establishing an imprudent and unfounded rule of law, the court makes serious procedural missteps. On appeal from the denial of a motion for summary judgment based on qualified immunity, this court “lack[s] jurisdiction to review the genuineness of a fact issue.” Allen v. Cisneros, 815 F.3d 239, 244 (5th Cir. 2016). We have jurisdiction to review only the materiality of the factual issues. See id. In this case, the district court found that the plaintiff “has introduced evidence suggesting that Phillips’s identification of [the plaintiff] in his incident report was reckless.” The majority opinion acknowledges that recklessness is a question of fact, but in the same breath, it concludes that the facts identified by the district court are not “material” to recklessness. Maj. Op. at 264 n.7. In actuality, the majority opinion simply overrules the district court’s determination that there is a genuine dispute as to whether Phillips “in fact entertained serious doubts as to the truth of the information included in the warrant application,” Hart, 127 F.3d at 449, and by so doing exceeds this court’s jurisdiction.[3] The majority proceeds to absolve Phillips on the additional basis that, even if he did violate the plaintiffs constitutional rights, those rights were not “clearly established.” Phillips never made such an argument—not before the district court, not in his brief on appeal, and not in his supplemental en banc brief. The majority opinion states that Phillips’s assertion of qualified immúnity below “placed thé burden on Melton to demonstrate that neither prong of the defense applies.” Maj. Op. at 265 n,9. But it is the appellant’s burden to show that the district court erred.- See Santillana v. Williams, 599 F.2d 634, 635 (5th Cir. 1979) (“The burden of appellant on appeal is to persuade the appellate court that the trial judge committed an error of law.”); Vetter v. Frosch, 599 F.2d 630, 633 (5th Cir. 1979) (“The appellant has the burden of persuading the appellate court that the district court erred.”); Murphy v. St. Paul Fire & Marine Ins. Co., 314 F.2d 30, 31 (5th Cir. 1963) (“It is elementary instead that the burden is on the appellants to show error.”). It is not appropriate for the court to attempt to shoulder this burden on Phillips’s behalf. The majority opinion proceeds to assert on Phillips’s behalf that the complaint contained no false information, Maj. Op. at 265-66, even though Phillips never argued before the district court or before the panel on appeal that his false identification of the plaintiff as the assailant in his report did not result in the plaintiffs wrongful arrest or that'the complaint did not falsely identify the plaintiff as the suspected assailant based on his report. Phillips has therefore forfeited these arguments that the majority opinion attempts to raise for him. See, e.g., Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov’t, 849 F.3d 615, 626 (5th Cir. 2017) (citing In re Paige, 610 F.3d 865, 871 (5th Cir. 2010)) (“[T]his court generally does not consider arguments raised for. the first time on appeal.”); United States v. Brace, 145 F.3d 247, 261 (5th Cir. 1998) (en banc) (holding that the en banc court cannot address an issue that was not presented to the panel on appeal, and stating, “It bears repeating—indeed, cannot be overemphasized— that we do not address issues no,t presented to us.”). Pro se litigants could only dream of receiving the judicial help that the en banc court is giving an officer represented by a highly competent attorney. See, e.g., Mapes v. Bishop, 541 F.3d 582, 584 (5th Cir. 2008) (“Although pro se briefs are afforded liberal construction, even pro se litigants must brief arguments in order to preserve them.” (citation omitted)). This court’s zeal to protect- officers from the prospect of chilling liability cannot justify abandoning our rules and reversing the district court’s judgment on the basis of arguments that the appellant has not made. * Because I believe that the majority opinion errs in reversing the district court’s denial of qualified immunity, I respectfully dissent. . Phillips’ affidavit asserts only that, "[a]s standard practice,” the identity of the suspect in his report "would have been" based on what he was told by the victim, but he does not actually contend that the victim gave him the plaintiffs middle name or physical description, or that the victim even knew the plaintiff, let alone explain how or why the victim would have given Phillips the plaintiff's information instead of the information of the actual assailant, who was known to the victim. . The majority opinion cites KRL v. Moore, 384 F.3d 1105, 1118 (9th Cir. 2004), as "holding that 'because he had no role in the preparation of the ... warrant,' an officer who was involved at every stage of an investigation was entitled to qualified immunity for material omissions in a warrant application.” Maj. Op. at 263 n,5. This misrepresents Moore’s holding. In Moore, the plaintiffs challenged the omission of information that was known to those who drafted and signed the affidavit. 384 F.3d at 1117. Thus, the official in question, an investigator who was not involved in the preparation of the affidavit, bore no responsibility for the misleading omission of any information from the affidavit. See id. at 1108-09, 1118. By contrast, in the instant case, there is no dispute that Phillips was the source of the material misrepresentations provided to the affiant. . The district court’s conclusion was also correct. The plaintiffs expert witness averred that Phillips simply entered the name "Michael Melton" into a computer database and used the result of his search to identify the plaintiff in his report, without making any attempt to corroborate that he was the right "Michael Melton.” A reasonable juror certainly could conclude based on these facts that Phillips entertained doubts as to the truth of his report. As previously discussed, Phillips could reasonably expect his false report to- be used in support of a warrant application, and his false report in fact led to the plaintiff’s wrongful arrest, In my view, this is sufficient to establish a genuine dispute as to whether Phillips violated the plaintiffs' constitutional rights,