JENNIFER WALKER ELROD, Circuit Judge, joined by STEWART, Chief Judge, JOLLY, JONES, SMITH, CLEMENT, PRADO, OWEN, SOUTHWICK, HAYNES,* and HIGGINSON, Circuit Judges: Michael David Melton alleges that he was arrested in violation of the Fourth Amendment for an assault committed by another man with the same first and last names. He seeks to hold Deputy Kelly Phillips, who took the original incident report, liable for his arrest under 42 U.S.C. § 1983. Deputy Phillips moved for summary judgment in district court, asserting the defense of qualified immunity. The district court determined that fact issues precluded summary judgment on one of .Melton's Section 1983 claims. Because Deputy Phillips is entitled to summary judgment even when construing all the facts in the light most favorable to Melton, we REVERSE!. the district court’s order and RENDER summary judgment on Melton’s remaining Section 1983 claim against Deputy Phillips. I. In June 2009, Deputy Phillips interviewed an alleged assault victim and filled out an incident report identifying the alleged assailant by the name “Michael David Melton.”[1] After Deputy Phillips submitted the report, an investigator with the Sheriffs Office began investigating the assault. A year later, the alleged victim provided the investigator with a sworn affidavit identifying the alleged assailant as “Mike Melton.” The Hunt County Attorney’s Office then filed a complaint against “Michael Melton.” The alleged assailant’s first and last names are the only identifying information contained in the complaint, and their accuracy is undisputed. Four days after the complaint was filed, a Hunt County judge issued a capias warrant correctly identifying the assailant as “Michael Melton.”[2] Two years after the judge issued the warrant, Melton was arrested on assault charges and detained for sixteen days before being released on bond. It is undisputed that Deputy Phillips’s involvement ‘in the chain of events that led to Melton’s May 2012 arrest and detention ended with the incident report in June 2009. Melton v. Phillips, 837 F.3d 502, 505 (5th Cir. 2016). The assault charges against Melton were ultimately dismissed for insufficient evidence. Melton then sued Deputy Phillips under 42 U.S.C. § 1983, alleging that Deputy Phillips was responsible for his arrest under Franks and Hart because Deputy Phillips included false information in his incident report.[3] Deputy Phillips asserted the affirmative defense of qualified immunity and provided an affidavit stating broadly that the identifying information in the incident report “would have been based solely on what I was told by [the victim].” In his affidavit, Phillips also averred, as is stated in the incident report, that the victim provided the assailant’s first name, last name, gender, ethnicity, and date of birth. Melton responded by alleging that Deputy Phillips did not obtain any identifying information from the victim other than the assailant’s first and last names. Melton relied on an affidavit by former Hunt County Patrol Lieutenant Brian Alford for his explanation of how Deputy Phillips obtained the information in the incident report. According to Alford’s affidavit, victims generally cannot provide the exact date of birth or driver’s license number of an offender who is not a family relation. Therefore, Alford averred that Deputy Phillips must have obtained the information from a database called a P.I.D. used by the Hunt County Sheriffs Office. Alford further stated that Melton and the true assailant have no identifying characteristics in common other than their first and last names. Accordingly, Alford inferred that Deputy Phillips must have obtained the information in the incident report from the P.I.D. without asking the victim to verify any information other than first and last names. Finally, Alford’s affidavit averred that a reasonable officer would not rely on the P.I.D. without verifying additional information beyond first and last names. The district court determined that Alford’s affidavit created a genuine issue of material fact regarding whether Deputy Phillips obtained identifying information from the victim, whether he cross-checked that information against the P.I.D. results, whether he used the P.I.D. system at all, and whether his use of the P.I.D. system was improper. The district court reasoned that these questions were material to recklessness, which is an element of liability under Franks. Accordingly, the district court denied Deputy Phillips’s motion for summary judgment on qualified immunity with respect to Melton’s Franks-based Section 1983 claim.[4] Deputy Phillips appealed the district court’s denial of summary judgment. Interlocutory appeal was appropriate in this case because Deputy Phillips had raised the defense of qualified immunity, which is an immunity from suit that must be considered at the earliest possible stage of litigation. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). A divided panel of this court affirmed the district court in part and dismissed the appeal for lack of jurisdiction to the extent it challenged the genuineness of the factual dispute over recklessness. Melton, 837 F.3d at 510. The panel majority further held sua sponte that, although Jennings v. Patton, 644 F.3d 297 (5th Cir. 2011), and Hampton v. Oktibbeha County Sheriff Department, 480 F.3d 358 (5th Cir. 2007), “grant[ed] qualified immunity to government officials who neither signed nor drafted warrant applications,” these opinions lacked precedential value because, in the panel majority’s view, they contradicted this court’s earlier decision in Hart. Melton, 837 F.3d at 509. Accordingly, the panel majority sua sponte overruled Jennings and Hampton. The panel majority also rejected Deputy Phillips’s alternative argument that he was entitled to qualified immunity under the independent intermediary doctrine. The dissenting opinion would have held that the requirement of participation in preparing an application for a warrant in Jennings and Hampton is consistent with Hart’s requirement that information be provided “for use in an affidavit in support of a warrant.” Id. at 513 (Elrod, J., dissenting). Because there was no evidence that Deputy Phillips provided information for the purpose of having it used in obtaining a warrant, the dissenting opinion would have held that Deputy Phillips was entitled to summary judgment under Hart, Hampton, and Jennings. Id. at 511-13. Deputy Phillips petitioned for rehearing en bane, and we granted the petition. II. “The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law.” Flores v. City of Palacios, 381 F.3d 391, 393 (5th Cir. 2004). “Accordingly, we lack jurisdiction to review the genuineness of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the materiality of [the] factual issues.” Allen v. Cisneros, 815 F.3d 239, 244 (5th Cir. 2016). We review the materiality of fact issues de novo. Lemoine v. New Horizons Ranch & Ctr., Inc., 174 F.3d 629, 634 (5th Cir. 1999). Where the district court has identified a factual dispute, we ask whether the officer is entitled to summary judgment even assuming the accuracy of the plaintiffs version of the facts. Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). “A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.” King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016). To satisfy this burden and overcome qualified immunity, the plaintiff must satisfy a two-prong test. Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). First, the plaintiff must show “that the official violated a statutory or constitutional right.” Id. Second, the plaintiff must show that “the right was ‘clearly established’ at the time of the challenged conduct.” Id. To avoid summary judgment on qualified immunity, “the plaintiff need not present absolute proof, but must offer more than mere allegations.” King, 821 F.3d at 654. Because the plaintiff is the non-moving party, we construe all facts and inferences in the light most favorable to the plaintiff. Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 307, 193 L.Ed.2d 255 (2015); Tolan v. Cotton, — U.S. —, 134. S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014). As explained below, Melton’s claim fails under both prongs of the qualified immunity analysis, because, even assuming his version of the disputed facts and construing all facts and inferences in his favor, the connection between Deputy Phillips’s conduct and Melton’s arrest is too attenuated to hold the deputy liable under the rule that we reaffirm today or under any law that was clearly established at the time that Deputy Phillips filled out the incident report. A. Melton’s argument that Deputy Phillips violated his Fourth Amendment rights is based on the Supreme Court’s decision in Franks and our subsequent application of Franks in Hart. The defendant in Franks was convicted of sexual assault and sentenced to life imprisonment after the district court denied his motion to suppress evidence that had been seized pursuant to a search warrant. Franks, 438 U.S. at 160, 98 S.Ct. 2674. The warrant affidavit in that case stated that the affiant had personally spoken with two individuals who worked at the defendant’s place of employment, who had both told him that the defendant often' wore clothing that matched the description offered by the victim. Id. at 157, 98 S.Ct. 2674. At the suppression hearing, the defendant requested the right to call these individuals to testify that they had never spoken personally with the affiant and that if they had spoken to another police officer, any information they would have provided about the defendant would have been “somewhat different” from what was recited in the affidavit. Id. at 158, 98 S.Ct. 2674. The district court refused to hear testimony on this point and denied the defendant’s motion to suppress. Id. at 160, 98 S.Ct. 2674. The Supreme Court of Delaware affirmed, holding that a defendant may never challenge the veracity of a warrant affidavit. Id. The Supreme Court of the United States reversed, determining that the Fourth Amendment entitles a defendant to a hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application; Id. at 171-72, 98 S.Ct. 2674. Particularly relevant to our analysis here, the Supreme Court also observed in a footnote that an officer should not be permitted to “insulate” a deliberate misstatement “merely by relaying it through an officer-affiant personally ignorant of its falsity.” Id. at 168 n.6, 98 S.Ct. 2674, Our decision in Hart applied this principle to allow Section 1983 claims against an officer who “deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant].” Hart, 127 F.3d at 448-49 (citing Franks, 438 U.S. at 163 n.6, 98 S.Ct. 2674) (holding that assistant county attorney was entitled to qualified immunity because he did not act recklessly when he erroneously told an officer who was filling out a warrant application that the person to be arrested for suspected drug offenses was the wife of a known marijuana cultivator). In Hampton, we clarified that the holding in Hart does not extend to -officers who neither prepared nor presented the warrant affidavit. Hampton, 480 F.3d at 365 (holding that two officers who did not prepare, present, or sign a warrant affidavit were entitled to qualified immunity whereas a third officer who prepared the warrant affidavit could be liable for falsely accusing the plaintiff of resisting another individual’s arrest). We reaffirmed this principle in Jennings, holding again that an officer enjoys qualified immunity if he does not prepare, present, or sign a warrant application. Jennings, 644 F.3d at 300-01 (holding that judge who allegedly, fabricated corruption charges was entitled to qualified immunity because there was no evidence that he prepared or presented the warrant application and the independent intermediary doctrine shielded him from liability on other grounds). The panel opinion treated Jennings and Hampton as in conflict with Hart. Melton, 837 F.3d at 509. However, we, like the parties in this case, interpret our precedents to be in one accord. Thus, an officer who has provided information for the purpose of its being included in a warrant application under Hart has assisted in preparing the' warrant application for purposes of Jennings and Hampton and may' be liable, but an officer who has not provided information for the purpose of its being included in a warrant application may be liable only if he signed or presented the application. The parties have not asked us to overrule Jennings and Hampton in favor of a broader rule of liability, and Franks counsels against such a course. The Supreme Court expressly stated that the Franks rule is a narrow one and that its narrowness reflects six concerns. Franks, 438 U.S. at 167, 98 S.Ct. 2674. First, a broad Fourth Amendment rule could interfere with criminal convictions and be costly to society. Id. at 165-66, 98 S.Ct. 2674. Second, a broad rule would have minimal benefit in light of “existing penalties against perjury, including criminal prosecutions, departmental discipline for misconduct, contempt of court, and civil actions.” Id. at 166, 98 S.Ct. 2674. Third, magistrates have the ability to inquire into the accuracy of an affidavit before a warrant issues, both by questioning the affiant and by summoning others to testify at a warrant proceeding. Id. Fourth, “[t]he less final, and less deference paid to, the magistrate’s determination of veracity, the less initiative will he use in that task,” despite the fact that the magistrate’s scrutiny is “the last bulwark preventing any particular invasion of privacy before it happens.” Id. at 167, 98 S.Ct. 2674. Fifth, the proliferation of challenges to the veracity of warrant applications could unduly burden the court system and be abused by defendants as a source of discovery. Id. Sixth, a broad rule would be in tension with the fact that “[a]n affidavit may properly be based on hearsay, on fleeting observations, and on tips received from unnamed informants whose identity often will be properly protected from revelation,” so that “the accuracy of an affidavit in large part is beyond the control of the affiant.” Id. Accordingly, in light of the Supreme Court’s guidance, we decline to adopt a broad new rule of officer liability sua sponte.[5] Because we interpret our precedents to be consistent and do not choose to announce a broad new rule of liability, we apply the requirement that an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under Franks.[6] It is undisputed that Deputy Phillips did not present or sign the complaint on the basis of which the capias warrant issued. Thus, Deputy Phillips can be subject to liability only if he helped prepare the complaint by providing information for use in it. See Jennings, 644 F.3d at 300-01; Hampton, 480 F.3d at 365. To the extent that Jennings or Hampton could be read to immunize the provision of information for use in preparing a warrant application, we do not read them that broadly. As explained above, Franks liability can reach not only those fully responsible for preparing a warrant application, but also those who “deliberately or recklessly provide[] false, material information for use in an affidavit.” Hart, 127 F.3d at 448. Likewise, “an officer who makes knowing and intentional omissions that result in a warrant being issued without probable cause” is also liable under Franks. Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (citing Hart, 127 F.3d at 448). Separate from a Franks liability context, an officer could be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was “so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” Malley v. Briggs, 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (citing United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The Malley wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant. In this situation, we have rightly recognized that liability should attach only to the “affi-ant and person who actually prepared, or was fully responsible for the preparation of, the warrant application.” Michalik, 422 F.3d at 261. That is because an officer who only provides a portion of the information included in the affidavit has no way of knowing whether the “whole picture” painted by the evidence establishes probable cause. Id. As discussed above, Franks liability—our concern here—addresses the distinct issue of false information in a warrant application. Here, the fact issue that the district court identified was whether Deputy Phillips used the P.I.D. in an improper way while preparing the incident report. The district court determined that this fact issue was material to recklessness and that Deputy Phillips’s immunity depended on whether he was reckless because, as the district court understood it, Franks applies to “any government official who makes a reckless misstatement.” However, even assuming arguendo that Deputy Phillips was reckless in completing the incident report,[7] he is still entitled to summary judgment unless there is a question of fact as to whether he assisted in the preparation of the complaint on the basis of which the capias warrant issued. See Jennings, 644 F.3d at 300-01; Hampton, 480 F.3d at 365. Melton seeks to create a fact issue as to whether Deputy Phillips helped prepare the complaint by providing information for use in it, asserting that “[a]ny investigator would know” an incident report will be used to obtain a warrant. However, there is no record evidence of a policy or practice at the Hunt County Sheriffs Office that would have allowed Deputy Phillips to anticipate that the incident report would be used to obtain a warrant. See OA at 38:25-40:40. Nor, as Melton has conceded, is there record evidence suggesting that Deputy Phillips knew this specific report would be used to obtain a warrant. OA at 38:11-38:23. Moreover, unchecked boxes at the end of the incident report show that Deputy Phillips chose not to file the report with a justice of the peace, a county attorney, or a district attorney. Because the record does not contain evidence that the information in the incident report was provided for the purpose of use in the complaint, Deputy Phillips did not participate in preparing the complaint. See Hart, 127 F.3d at 448-49. Accordingly, because he did not assist in preparing, present, or sign the complaint, Deputy Phillips cannot be held liable under Franks. See Jennings, 644 F.3d at 300-01; Hampton, 480 F.3d at 365. Accordingly, Deputy Phillips is entitled to summary judgment on this claim. B. Even assuming arguendo that Melton could demonstrate that a fact issue .exists on his claim that Deputy Phillips recklessly filled out the incident report, Melton bears the burden of demonstrating that Deputy Phillips violated his clearly established rights.[8] See Morgan, 659 F.3d at 371. “Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right ‘clearly’ in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.” Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015); see also Kinney, 367 F.3d at 350. “Although a case directly on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.” Vincent, 805 F.3d at 547; see also Kinney, 367 F.3d at 350.[9] Thus, “[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Luna, 136 S.Ct. at 308. Rather than attempting to demonstrate that his rights were clearly established by cases addressing analogous or near-analogous facts, Melton has repeatedly emphasized that the facts of his case are unique. See, e.g., Red Brief at 20; OA at 28:38— 29:09; OA at 36:09-37:33; OA at 56:54-57:24. Moreover, Melton conceded at oral argument that he could not identify a single case applying Franks to a situation in which there was no error in the complaint and no false statement that made its way into the warrant. OA at 55:26-56:05. Indeed, Franks expressly requires a falsehood to be included in the warrant application for there to be a Fourth Amendment violation. Franks, 438 U.S. at 155-56, 98 S.Ct. 2674. Particularly in light of Franks’s detailed discussion of why its rule must be narrowly construed, we cannot say Franks clearly established the unconstitutionality of Deputy Phillips’s conduct. See id. at 165-67, 98 S.Ct. 2674. Moreover, even if Melton had attempted to satisfy his burden rather .than conceding that his case-is unique and that no case applies Franks in similar circumstances, Melton could not have shown that Deputy Phillips .violated his clearly established rights without assisting in preparing, presenting, or signing the complaint. Hart and Hampton had been decided at the time Deputy Phillips prepared the incident report. As discussed above, Hampton held that an officer is entitled to qualified immunity if he does not prepare, present, or sign a warrant application. Hampton, 480 F.3d at 365. Hart held that an officer is not entitled to qualified immunity if he “deliberately or recklessly provides false, material information for use in cm affidavit in, support of [a warrant].” Hart, 127 F.3d at 448-49 (emphasis added). Because Melton cannot show that Deputy Phillips prepared, presented, signed, or provided information for .use in the complaint, he cannot show that Deputy Phillips violated clearly established law.[10] III. For the reasons explained above, we REVERSE the district court’s order and RENDER summary judgment for Deputy Phillips on Melton’s claim of liability under Franks. Judge Haynes concurs in the judgment and concurs as to Parts I and II.B only. . Melton’s briefs argued that the incident report’s use of the middle name ‘‘David’’ erroneously identified him as the assailant. However, the record does not show that this information ever made its way to the judge who issued the warrant, As Melton has conceded, the record does not show that the incident report itself was presented to the judge. OA at 41:51-42:11. Moreover, no erroneous information from the report was incorporated into the complaint that was presented to the judge: Melton has conceded that the complaint is accurate. OA at 40:55-41:51. . The record does not contain any document labeled as a warrant application or probable cause affidavit. The warrant appears to have issued based on a complaint filed by an Assistant Hunt County Attorney. However, the briefing by both parties assumes that a complaint that leads to a capias warrant is the equivalent of a warrant application for purposes of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and Hart v. O’Brien, 127 F.3d 424 (5th Cir. 1997). We accept their assumption for purposes of deciding this case without reaching the question because the issue has not been briefed, is not disputed by the parties, and would not alter the outcome here. . Melton also brought numerous state-law claims against Deputy Phillips and a variety of state-law and Section 1983 claims against Hunt County, the Hunt County Sheriff’s Department, and the Hunt County Sheriff. However, the only claim at issue in this interlocutory appeal based on qualified immunity is Melton’s Section 1983 claim based on Franks. . The district court granted Deputy Phillips's motion for summary judgment on Melton's Section 1983 claims that were based on the Fifth Amendment, and those claims are not at issue here. . We observe that none of our sister circuits has applied Franks to circumstances in which an officer’s connection to the plaintiff’s arrest is as attenuated as in this case. See, e.g., KRL v. Moore, 384 F.3d 1105, 1118 (9th Cir. 2004) (holding that, “because he had no role in the preparation of the ... warrant,'.’ an officer who was involved at every stage of an investigation was entitled to qualified immunity for material omissions in a warrant application); see also United States v. Brown, 631 F.3d 638, 640-42 (3d Cir. 2011) (applying Franks where non-affiant helped prepare the warrant affidavit); Burke v. Town of Walpole, 405 F.3d 66, 86 (1st Cir. 2005) (applying Franks where officer Who "was centrally involved in the collection of evidence to be used to secure an arrest warrant’’ withheld evidence from the affiant); United States v. Wapnick, 60 F.3d 948, 950, 955-56 (2d Cir. 1995) (applying Franks where non-affiant "knowingly or recklessly made false statements to [the affiant] in connection with [the affiant’s] preparation of the affidavit”); United States v.. DeLeon, 979 F.2d 761, 762-63 (9th Cir. 1992) (applying Franlcs where the affiant was present during the non-affiant investigator’s telephone interviews.and based same-day affidavit on those interviews); United States v. Calisto, 838 F.2d 711, 712-13 (3d Cir. 1988) (applying Franks where non-affiant informants provided information regarding a drug investigation to a police officer who then obtained a warrant); United States v. Pritchard, 745 F.2d. 1112, 1118-19 (7th Cir. 1984) (applying Franks where non-affiant provided information to af- • fiant and noting that Franlcs applies "when one government agent deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit”). Moreover, Hart fully addresses the panel's concern that an officer might seek to insulate a misstatement "merely by relaying it through an officer-affiant personally ignorant of its falsity” because it applies Franlcs to officers who provide information for use in a warrant application. See Hart, 127 F.3d at 448 (citing Franks, 438 U.S. at 163 n.6, 98 S.Ct 2674). : As noted above, Melton has not requested a broad new rule but 'only asSerts that Deputy Phillips is liable under our circuit's existing case law. . In the alternative, the fact issues identified by the district court are not material to recklessness as defined in Hart. For purposes of liability under Franks, Hart defined recklessness to require that an officer "in fact entertained serious doubts as to the truth” of the information included in the warrant application. Hart, 127 F.3d at 449. Even assuming arguendo that Alford correctly surmised that Deputy Phillips used the P.I.D. system without having the victim verify any identifying information other than first and last names and that a reasonable officer would not have relied on information so obtained, this would not satisfy the requirement that Deputy Phillips entertained serious doubts as to the truth of the information in the report. Melton has not pointed to any evidence on this requirement. . "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum.” United States v. Potts, 644 F.3d 233, 237 n.3 (5th Cir. 2011). . Although neither Melton nor Deputy Phillips has briefed this prong of the qualified immunity analysis, Deputy Phillips's good-faith assertion of qualified immunity has placed the burden on Melton to demonstrate that neither prong of the defense applies. King, 821 F.3d at 653. Moreover, both parties have briefed their understanding of the law that existed at the time Deputy Phillips prepared the incident report, and reaching prong two of qualified immunity does not result in unfair prejudice. It is important to consider the defense at the earliest possible stage of litigation because qualified immunity is an immunity from suit that "is effectively lost if a case is erroneously,permitted to go to trial.” Pearson, 555 U.S. at 231, 129 S.Ct. 808; see also White v. Pauly, — U.S. -, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (noting that qualified immunity is "important to society as a whole”); Behrens v. Pelletier, 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (noting that qualified immunity is "too important to be denied review” on interlocutory appeal). . Because we decide the case on the grounds explained above, we do not reach Deputy Phillips’s additional alternative argument that he is entitled to qualified immunity under the independent intermediary doctrine.