## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20532

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2018

**Lyle W. Cayce**
Clerk

CRAIG A. WASHINGTON,

Plaintiff–Appellee,

v.

JOSE SALAZAR,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-362

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Jose Salazar appeals the district court's order denying his motion for summary judgment based on qualified immunity. But genuine issues of material fact preclude qualified immunity. For that reason, we DISMISS Salazar's appeal for lack of jurisdiction.

**I.**

Late on the night of February 13, 2014, Plaintiff–Appellee Craig Washington awoke to the sound of breaking glass outside his home office in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20532

Houston. He looked out his window and saw a beer bottle fly over his fence and shatter in his parking lot. Washington grabbed his 12-gauge shotgun and went to investigate, dressed only in a coat and underwear. By the time Washington stepped outside, he saw no one on his property. But he noticed several broken beer bottles and saw three young men walking down the street toward the nearby Limelight Club. So he followed the trio.

Washington approached the valet stand at the Limelight Club. According to Washington, both he and the valets stood on the sidewalk. He was still carrying his shotgun, down at his side and pointed at the ground. Washington asked the valets if they saw the people who just passed by. Unable to get any information, he complained about the broken beer bottles on his property and then returned to his home office. After Washington left, a valet told Sergeant Lawrence Leon and Officer Luis Gamez, two off-duty officers working at the Club: "There's someone walking down the street with a shotgun." Leon thought the valet seemed excited, nervous, and scared.

Around that time, Officers Charles Barner and Stephanie Moses-Davis arrived at the Club, responding to a separate noise complaint. Leon told Barner and Moses-Davis that Washington "has a shotgun. Go stop him." Barner and Moses-Davis drove down the street and saw Washington outside his home office, shotgun pointed to the ground.

Barner radioed that there was a man with a gun and requested back up. Deputy Kerry Robinson was dispatched. Robinson was told there were men throwing bottles at Washington's property and a man had a shotgun. Barner and Moses-Davis asked Washington to put the gun down. Washington complied. The officers secured Washington's gun. They then conducted a preliminary investigation, speaking with Leon and the valets, to determine if Washington engaged in any illegal conduct, such as pointing the gun at anyone or entering the Club's premises. The result was inconclusive—no witness

2

reported seeing Washington on the Club's property, behaving in a threatening manner, or otherwise acting illegally.

Defendant–Appellant Sergeant Jose Salazar was one of the officers dispatched for "a weapon disturbance." Upon arriving at Washington's home, Salazar was the highest-ranking officer and thus the supervisor. Barner briefed Salazar, and Salazar ensured Washington was detained and secured. Salazar personally confirmed the weapon involved was a shotgun.

Based on Barner's report, Salazar told Barner to call the District Attorney to see if they could charge Washington with "unlawfully carrying a weapon." Barner explained to the DA what he heard from Leon: Washington had a shotgun and was seen walking down the street. The DA responded, "I'm not taking any charges because it's not against the law." Barner told Salazar about the conversation and that the DA refused charges.

At some point, Leon arrived and further briefed Salazar. Leon did not tell Salazar that any valet suggested Washington entered the Club's parking lot or displayed the shotgun in a threatening way. Leon then returned to the Club. Officer Kerry Clopton also arrived with a partner. When Clopton arrived, he pointed at Washington, identified him as a political figure, and stated: "That's the guy that's been causing us problems."

Salazar then said he would call the DA with "additional information." According to Salazar, he wanted to ensure the DA heard "all the facts," including that Washington "made it to the parking lot with the shotgun." Salazar says the DA agreed on the call that Washington violated the Texas Alcoholic Beverage Code ("TABC") by entering the parking lot, which was enough to charge him with possession of a firearm at a licensed premise. Salazar told Barner the DA accepted charges for "unlawfully carrying a

firearm, weapon, shotgun"[1] and directed him to arrest Washington and seize his shotgun. Barner arrested Washington and explained he was being charged with unlawfully carrying a weapon.

Washington was jailed and released on bond that morning. He was charged with unlawfully carrying a handgun, a felony offense if committed on premises licensed to sell alcohol. The charge was later dismissed, and Washington's shotgun was returned to him.

Washington sued Salazar, Clayton Scott, the City of Houston, and Harris County under 42 U.S.C. § 1983, alleging he was falsely arrested in violation of his Second, Fourth, and Fourteenth Amendment rights. The parties consented to have a Magistrate Judge conduct all proceedings. After discovery, Salazar moved for summary judgment, asserting qualified immunity.

The court granted Salazar's motion on Washington's Second and Fourteenth Amendment claims. It concluded Washington presented no authority establishing that seizing his shotgun under the circumstances violated the Second Amendment. And it determined that his Due Process claim—in which he alleged Salazar made false statements to effectuate the arrest—was more appropriately analyzed under the Fourth Amendment.

The court denied qualified immunity on Washington's Fourth Amendment claim. It found conflicting evidence as to whether Washington was physically on premises licensed to sell alcohol and whether Salazar knew that fact. Under Washington's version of the facts, "it would have been objectively unreasonable for Salazar to believe that there was probable cause to arrest Washington for *any* offense." The court also noted the unlawful carry offenses

---

[1] Salazar argues Barner filed the incorrect charge. Instead, the correct charge was "possession of a firearm at a licensed premise." This is disputed. "Any factual disputes that exist in a qualified immunity appeal are resolved in favor of Plaintiffs' version of the facts." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citing *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)).

No. 17-20532

omit shotguns. Thus, disputed issues of material fact precluded summary judgment based on qualified immunity. Salazar timely appealed.

## II.

We have jurisdiction to hear appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney*, 367 F.3d at 346 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Our jurisdiction, however, is limited: Our court is "restricted to determinations 'of question[s] of law' and 'legal issues.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (alteration in original) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir. 2005)); *see also Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).

In short, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney*, 367 F.3d at 348. "Where the district court has identified a factual dispute, we ask whether the officer is entitled to summary judgment even assuming the accuracy of the plaintiff's version of the facts." *Melton*, 875 F.3d at 261.

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Id.* (quoting *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)). We do not question the correctness of the plaintiff's version of the facts—instead, we accept Washington's version of the facts as true and review the district court's ruling de novo. *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010).

5

### III.

On appeal, Salazar maintains he is entitled to qualified immunity—he says it was objectively reasonable for him to believe probable cause existed to arrest Washington. Officials are entitled to qualified immunity to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to overcome qualified immunity, a plaintiff must show (1) "that the official violated a statutory or constitutional right;" and (2) that "the right was 'clearly established' at the time of the challenged conduct." *Melton*, 875 F.3d at 261 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)).

The right to be free from warrantless arrest without probable cause is clearly established. *See, e.g.*, *Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017). An officer is therefore not entitled to qualified immunity if "'there was no actual probable cause for the arrest' and he was 'objectively unreasonable in believing there was probable cause for the arrest.'" *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (quoting *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006)). In other words, the central inquiry for qualified immunity in a false-arrest claim is "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Here, we must ask

whether it was objectively reasonable for Salazar to conclude probable cause existed.

Salazar argues it was. He proposes three possible offenses supported probable cause: (1) unlawfully carrying a weapon, (2) unlawfully carrying a weapon on a TABC-licensed premises, and (3) disorderly conduct.

Salazar attempts to circumvent this court's limited jurisdiction by arguing that his actions were objectively reasonable, yet his argument is not a purely legal one. In fact, his argument depends largely on his own version of the facts, which Washington genuinely contests. This is exactly the kind of thing that precludes summary judgment.[2]

For example, according to Salazar, he arrived and concluded, based on information provided by Leon,[3] that "Washington had set foot on a licensed premises with a shotgun." But, according to Washington, there is no evidence suggesting he ever set foot on the Limelight Club's premises or that officers reported to Salazar that he was suspected to have done so. Washington says he merely approached the valets on the sidewalk with his shotgun pointed at the ground. And Leon testified that no one ever told him or gave him the impression Washington entered the premises with the shotgun, and he never suggested to anyone that Washington had.[4] Barner and Moses-Davis also confirmed that no one suggested Washington stepped onto the Club's property or violated any law.

---

[2] *See* FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Kinney*, 367 F.3d at 348.

[3] Salazar argues that Leon told him that Washington "approached the valet guys and made contact with them." And Robinson testified that he heard Leon say Washington "was on the property."

[4] In fact, Leon testified that he "did not tell anyone that [Washington] entered nightclub property" and agreed with the statement that anyone who said that he told Salazar or anyone else that Washington was believed to have entered the parking lot "would not be telling the truth."

No. 17-20532

To take another example, Salazar argues he confirmed "there was sufficient information to support charges against Washington" with the DA. But this too is disputed. Both Barner and Moses-Davis testified they believe Salazar lied to the DA. And based on the information they had at the time, they did not believe probable cause existed to arrest Washington.

Finally, Salazar argues "there are no facts to support [Washington's] allegation that Sergeant Salazar . . . was not reasonable in relying on the information he received . . . ." But this argument misses the point while making it—there is a genuine dispute of material fact. We have explained that in denying qualified immunity at the summary-judgment stage, "the district court can be thought of as making two distinct determinations, even if only implicitly." *Kinney*, 367 F.3d at 346. First, that "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.* Second, that "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Id.* We lack jurisdiction to "review the district court's decision that a genuine factual dispute exists." *Id.* at 348. So the only proper issue for this appeal is whether, *under Washington's version* of the facts, it was objectively reasonable for Salazar to believe probable cause existed.

It wasn't. Under Washington's version of the facts, all he did was walk down the street with a shotgun at his side, pointed at the ground, and speak to valets on the sidewalk. There is no indication Washington carried his shotgun in a threatening way. And it is not unlawful to openly carry a firearm in Texas, aside from the enumerated proscriptions in the Penal Code.[5]

---

[5] We note that "unlawfully carrying a weapon" is the only offense prohibiting weapons on premises licensed to sell alcohol. *See* TEXAS PENAL CODE § 46.02(a), (c). By its terms, that offense applies only to handguns, clubs, and location-restricted knives, not shotguns. *See id.* § 46.02(a), (a-4). It is also a felony for a handgun license holder to "intentionally, knowingly,

No. 17-20532

Accepting Washington's version of the facts as true, it would have been objectively unreasonable for Salazar to believe probable cause existed for *any* alleged offense. We agree with the district court: "evidence is conflicting whether Washington was physically on licensed premises, and whether Salazar was ever so advised." These outstanding fact issues are material, meaning they could affect the case's outcome. *See Newman v. Guedry*, 703 F.3d 757, 759 (5th Cir. 2012); *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001). Accordingly, we lack jurisdiction over Salazar's appeal.

## IV.

Because facts that the district court determined to be in genuine dispute are also material, we DISMISS Salazar's appeal for lack of jurisdiction.

---

or recklessly carr[y] a handgun" on premises licensed to sell alcohol. *Id.* § 46.035(b)(1), (g). But again, by its plain language, that offense does not apply to shotguns.