# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2019

Lyle W. Cayce
Clerk

No. 17-20620

LEROYCE EUGENE MCDONALD,

Plaintiff-Appellee,

v.

CHIEF OF POLICE CHARLES A. MCCLELLAND, JR.; POLICE OFFICER GREGG GREEN; SERGEANT OF POLICE M.D. NEWCOMB; POLICE OFFICER R. MASSEY,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-68

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellee Leroyce Eugene McDonald alleges Houston police officers used excessive force while executing a no-knock search warrant at his apartment. He sued numerous police officers and the chief of police under 42 U.S.C. § 1983 claiming, *inter alia*, that the officers violated his Fourth Amendment rights. Defendants-Appellants asserted qualified immunity and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

moved for summary judgment.  The district court denied their motion as to McDonald's Fourth Amendment excessive-force claim.  We reverse in part, vacate in part, and remand for further proceedings.

## I.

### A.

This case arises from a narcotics raid on McDonald's apartment on January 8, 2014.  Houston police were investigating McDonald for trafficking cocaine.  McDonald had previously been convicted of aggravated assault with a deadly weapon, and police had reason to believe he possessed a firearm at his apartment.  The police obtained a no-knock warrant.

As authorized by the warrant, police breached the apartment door by force and used "flash bang" diversionary devices.  Officer R.D. Massey was the first officer to enter the apartment.  He encountered McDonald standing just inside the apartment door.  Officer Massey ordered McDonald to get on the ground.  McDonald lay "down on the floor" with his "arms stretched out."  The other officers entered behind Officer Massey and proceeded to secure the apartment.  That included pursuing and arresting another suspect, who tried to flee out a window.  Their search revealed 13.3 grams of cocaine, 26.6 grams of marijuana, and two firearms—one of which they found lying in plain view in the living room.

McDonald's Fourth Amendment excessive-force claim arises from what happened immediately after the officers entered the apartment.  McDonald says that while he was lying compliant on the floor, one of the officers kicked him in the face, breaking his glasses and injuring his right eye.  Upon arrest he had a small cut under his eye and his right eyelids were swollen.

In his original complaint, McDonald named Officer Massey as the kicker.  But in his amended complaint, McDonald expressly withdrew that allegation,

stating "[t]he Plaintiff will also remove the allegation . . . regarding . . . Defendant R. Massey kicking him in the eye." Instead, the amended complaint alleged "the first officer to enter the apartment, kicked the plaintiff in the eye." And at his deposition, McDonald testified he does not "know who it was exactly"—it "could have been any one of [them]."

The officers attest Officer Massey was the first to enter the apartment. Officer Massey swears he "did not kick, mistreat, or insult Mr. McDonald during or after the execution of the narcotics search warrant," and he "did [not] observe any [other] police officer" do so. The other officers say the same.

After the raid, the officers reported they saw a "metal rod" sticking out from under a sofa near where McDonald dropped to the floor. They believed he hit his head on the protruding metal. McDonald was given first aid and transported to jail, where medical staff treated his eye with ibuprofen and an ice pack. He was eventually convicted of trafficking cocaine.

B.

McDonald sued three of the officers who raided his apartment—Officer Massey, Officer Gregg Green, and Sergeant M.D. Newcomb—under 42 U.S.C. § 1983. He also sued Houston Chief of Police Charles A. McClelland, Jr., who was not present at the raid. McDonald says one of the officers kicked him in violation of his Fourth Amendment rights and the other officers failed to intervene. He also claims the subordinate officers were inadequately trained and supervised.

Defendants asserted qualified immunity and moved for summary judgment. McDonald did not file a response to the summary judgment motion.

The district court denied summary judgment on McDonald's Fourth Amendment excessive-force claim. Pointing to McDonald's original verified complaint, the district court said "McDonald raises specific facts which show

excessive force by Massey and possibly other police officers." The district court did not acknowledge the existence of McDonald's amended complaint, did not explain whether it superseded the original complaint, and did not decide whether the amended complaint was sufficient to defeat qualified immunity. Defendants appealed.

## II.

Though the denial of a motion for summary judgment is not a final judgment, it can be appealed immediately under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985). We have described our interlocutory appellate jurisdiction as limited to "the purely legal question whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc); *see Johnson v. Jones*, 515 U.S. 304, 313 (1995). So "[w]here the district court has identified a factual dispute, we ask whether the officer is entitled to summary judgment even assuming the accuracy of the plaintiff's version of the facts." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). Once we have identified "the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record," the reasonableness of the officer's conduct is a question of law, *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis omitted), and we review it *de novo*, *see Melton*, 875 F.3d at 261.

## A.

McDonald says we lack jurisdiction over the excessive-force claim because the district court denied summary judgment based on questions of fact. But we have jurisdiction to determine whether "the district court erred in assessing the legal significance of the conduct that the court deemed

sufficiently supported." *Collins v. Ainsworth*, 382 F.3d 529, 541 (5th Cir. 2004); *accord Melton*, 875 F.3d at 261. That includes whether the alleged wrongdoing would violate clearly established law—a question the district court failed to answer.

With regard to the facts, it is impossible to identify what the district court determined. The entirety of its explanation consists of one sentence: "McDonald raises specific facts which show excessive force by Massey and possibly other police officers." This sentence says nothing about clearly established law. It does not specify which facts the district court found "sufficiently supported for purposes of denying summary judgment." *Collins*, 382 F.3d at 541. And it cites only McDonald's original complaint, with no acknowledgment or analysis of his amended complaint. That is an important omission because a superseded complaint, even if verified, "does not constitute competent summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam). And "an amended complaint supersedes and replaces an original complaint, unless the amendment specifically refers to or adopts the earlier pleading." *Eubanks v. Parker Cty. Comm'rs Court*, 44 F.3d 1004, at *2 (5th Cir. 1995) (per curiam) (quotation omitted); *see also King*, 31 F.3d at 346. In situations like this, we must "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, 515 U.S. at 319; *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996).

We have carefully reviewed the record and construed the facts in McDonald's favor. In doing so, we have remained cognizant that McDonald appeared *pro se*. McDonald's original complaint alleged Officer Massey "*purposely* kick[ed] the plaintiff in his face" and contained specific factual allegations describing the incident. (Emphasis added.) But McDonald omitted

most of those factual allegations from his amended complaint. And the record is mixed on whether McDonald intended his amended complaint to supersede or supplement his original complaint. Therefore, as the record appeared before the district court, there may have been insufficient evidence surrounding the circumstances of the alleged kick for McDonald's claims to survive summary judgment.

The Defendants' principal argument on appeal is, in effect, "no one kicked anyone." That of course is an argument we have no jurisdiction to consider. *See Johnson*, 515 U.S. at 316 (holding there is no appellate jurisdiction on interlocutory appeal of a qualified-immunity denial to consider the argument "we didn't do it"). The Defendants acknowledge McDonald's amended complaint, but they do not address McDonald's suggestion that he intended to supplement rather than replace his original complaint. And the Defendants have not helped us identify whether and to what extent the record might include other evidence the kick—the existence of which we're bound to assume on appeal—was intentional and unreasonable.

In these circumstances—where the Defendants' briefing is not comprehensive, where the district court's entire analysis consists of a single sentence citing an arguably inoperative pleading, and where the district court failed to address half of the qualified-immunity inquiry—we exercise our discretion to send the excessive-force question back for further consideration.

B.

To deny qualified immunity at the summary judgment stage, the district court must answer "yes" to *two* questions. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The first question is whether the officer violated a constitutional right." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Accidental contact between an officer and a civilian is not a Fourth

Amendment seizure—even if it injures the civilian—so a § 1983 plaintiff claiming excessive force must show that force was applied intentionally. *See Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989) (explaining that a seizure occurs only when a suspect's "freedom of movement" is terminated "*through means intentionally applied*" by the governmental actor); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (holding there can be no § 1983 liability for excessive force "in the absence of intentional conduct"). And even if the seizure involves intentional conduct, the district court must consider whether it was *unreasonable* under the specific circumstances of the seizure. *See, e.g., City of Escondido v. Emmons*, 139 S. Ct. 500, 503–04 (2019) (per curiam) (reversing the denial of qualified immunity where officers threw a man to the ground during an arrest). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks and alterations omitted).

"The second question is whether the 'right at issue was "clearly established" at the time of [the] alleged misconduct.'" *Morrow*, 917 F.3d at 874 (alteration in original) (quoting *Pearson*, 555 U.S. at 232). If the right was not clearly established, the officer is entitled to qualified immunity even if his conduct violated the plaintiff's constitutional rights. *See Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam). To be clearly established, "existing precedent" must "'squarely govern[]' the specific facts at issue." *Morrow*, 917 F.3d at 876 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam)); *see also Whitley v. Hanna*, 726 F.3d 631, 647 n.13 (5th Cir. 2013).

Both parties and the district court failed to address qualified immunity's second question. The district court did not consider whether Defendants' conduct—even assuming it violated the Fourth Amendment—violated *clearly established* law. *See Morrow*, 917 F.3d at 874. McDonald points to no such law on appeal. On remand, the parties and the district court must focus on whether clearly established law at the time of this police raid prohibited the force used under the circumstances. *See Escondido*, 139 S. Ct. at 503–04.

## III.

McDonald's original complaint invoked the bystander liability doctrine and sought recovery for failure to train and supervise. It is not clear whether these theories remain in the case. But Defendants think they do, and McDonald does not disagree. So we address them briefly.

## A.

Under our bystander liability doctrine, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To prove bystander liability, the plaintiff must show "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley*, 726 F.3d at 647 (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)). As always when qualified immunity is asserted, the plaintiff must point to clearly established law that would require intervention under the circumstances. *See id.* at 647 n.13.

Chief McClelland was not present, so he cannot be liable as a bystander. *See id.* at 646. And the uncontroverted evidence is that none of the defendant officers saw any other officer kick McDonald. Bystander liability cannot attach

if the officer did not know about and acquiesce in the constitutional violation. *See id.* at 647.  McDonald's bystander liability theory fails as a matter of law.

B.

Supervisors cannot be held vicariously liable under § 1983 for the conduct of others.  *Estate of Davis ex rel. v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  To hold a supervisor liable, a § 1983 plaintiff must show the supervisor's own conduct violated his constitutional rights.   *Id.* McDonald seeks to do so on the theory that Chief McClelland and Sergeant Newcomb failed to train and supervise the officers who executed the warrant regarding the proper use of force.

To establish liability based on a failure to train or supervise, a § 1983 plaintiff must show not only a failure to supervise or train the officer in question, but also that the failure was causally related to the plaintiff's injury and amounts to deliberate indifference.  *Davis*, 406 F.3d at 381.  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."   *Id.* (alteration in original) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  It usually requires a plaintiff to "demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"  *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (per curiam) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

There is no dispute of material fact regarding deliberate indifference here.  McDonald points to no evidence of prior Fourth Amendment violations— by any Houston police officer—that could have put supervisors on notice of a need to further train or supervise.  More importantly, there's no evidence Chief McClelland or Sergeant Newcomb were aware of any prior violations.  *See*

*Davis*, 406 F.3d at 381.  McDonald's failure to train and supervise theory fails as a matter of law.

\*     \*     \*

We REVERSE as to bystander liability and supervisory liability, VACATE as to excessive force, and REMAND for further proceedings consistent with this opinion.