# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2023

Lyle W. Cayce
Clerk

No. 22-20611

Stephanie Zavala,

*Plaintiff—Appellant*,

*versus*

Harris County, Texas; N. Harmon, *Jailer*; Diaz, *Jailer*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3341

Before Wiener, Willett, and Douglas, *Circuit Judges*.
Per Curiam:[*]

On September 12, 2017, Stephanie Zavala was arrested for misdemeanor criminal trespass and booked into the Harris County Jail. While confined, Zavala alleges that "one or more of the other inmates punched, kicked, and threw her on the floor where her head struck the concrete while two unidentified jailers looked on for several minutes." Zavala also alleges

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20611

that, on a prior occasion, she requested water from Jailer Napoleon Harmon. She says that, instead of giving her water, he placed her in a cell and used a hog-tie on her by shackling her wrists to her ankles because he was "annoyed with" her. In response, Zavala filed a complaint with the Harris County Sheriff's Office of the Inspector General (OIG).[1] Zavala contends that when she asked Harmon for water, he "pointed to the area where the disgusting toilet was and said [Zavala] could drink from there." In her OIG complaint, Zavala stated that the combined toilet and sink area in the holding cell was unsanitary, but she did end up drinking water from the sink.

Zavala filed a 42 U.S.C. § 1983 complaint and two amended complaints naming as defendants Harris County, Texas, (County) and Harmon.[2] The district court granted a motion for judgment on the pleadings and dismissed all claims against the County on November 23, 2021. On October 19, 2022, the district court granted summary judgment in favor of Harmon, dismissing with prejudice the Fourth and Fourteenth Amendment excessive force claims against him. The court also granted summary judgment in favor of Harmon for depriving Zavala of water when she was allegedly dehydrated in violation of the Fourteenth Amendment. Zavala timely appealed.

Zavala does not challenge the district court's dismissal of her water-deprivation claim against Harmon or of her Fifth Amendment Due Process claim. Zavala does, however, challenge the district court's judgment for the

_____

[1] There were two toilets in Zavala's holding cell. Both toilets were connected to sinks. One of the toilets was clogged and had a sink on top of it. The other toilet appeared to be functioning.

[2] Zavala also brought claims against a jailer identified only as "Jailer Diaz." The district court dismissed the claims against Diaz without prejudice for failure to serve pursuant to Fed. R. Civ. P. 4(m). Zavala does not challenge the district court's dismissal of Diaz in this appeal.

No. 22-20611

County on the pleadings (second amended complaint), which concluded that Zavala failed to state a claim for municipal liability under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). *See* Fed. R. Civ. P. 12(c). She also appeals the district court's grant of summary judgment in favor of Harmon on qualified immunity grounds for the excessive force claim. Both challenges fail.

I

A

We review de novo the district court's grant of the County's motion for judgment on the pleadings. *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (per curiam). For a motion for judgment on the pleadings, we review "whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citations omitted)); Fed. R. Civ. P. 12 (c). A *Monell* claim is used to assert liability for municipal policy. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019). We have identified three ways this liability can be established:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Third, even a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.

*Id.* (quotation marks and citations omitted).

Zavala alleges that the County has a widespread practice of allowing excessive use of force in the jail. She points to prior instances of an officer beating an inmate, an officer leaving an inmate in a squalid cell, and officers

shooting suspects outside the jail setting that she says show a pattern of conduct that fairly represents municipal policy. She contends that, as part of this policy, the County (1) failed to intervene when other inmates threw her on the floor, and (2) allowed Harmon to hog-tie her.

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (internal quotation marks and citation omitted). "A pattern requires similarity and specificity; prior indications . . . must point to the specific violation in question." *Id.* at 851 (alteration adopted) (internal quotation marks and citation omitted). The incidents to which Zavala points do not have the requisite similarity to be deemed a custom, adopted as official policy, and are not analogous to the facts here. As the district court observed, she has not alleged instances where jailers failed to intervene or used hog-ties in circumstances like hers. She thus fails to show a "practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Webb*, 925 F.3d at 215 (citation omitted).

Zavala also cannot prevail on any other theory of municipal liability. She does not show that the County was "deliberate[ly] indifferen[t] to an obvious need" in training its employees with respect to those issues. *See Peterson*, 588 F.3d at 849. Nor has she alleged facts supporting liability under a ratification theory. *Id.* at 848 (citation omitted) (explaining that ratification may occur when "the authorized policymakers approve a subordinate's decision and the basis for it," but that only happens in "extreme factual situations.") To the extent that Zavala argues these claims should be maintained because she has yet to obtain discovery, the district court determined correctly that she had ample prior opportunity to do so. Thus,

we agree with the district court that Zavala failed to state a *Monell* claim against the County. *Monell*, 436 U.S. at 690-91, 94.

B

We review the adverse summary judgment ruling granted by the district court on the excessive force claim against Harmon de novo. *See Estate of Henson v. Wichita County*, 795 F.3d 456, 461 (5th Cir. 2015). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where, as here, Harmon asserts qualified immunity, the burden shifts to Zavala to overcome that defense. *See Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). "[T]he plaintiff must show that the official violated a [plaintiff's] statutory or constitutional right" and "that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks and citations omitted). Which prong of that analysis to address first is within our discretion. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although Zavala asserts that Harmon used excessive force in violation of both the Fourth and Fourteenth Amendments, "[t]he constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) (citation omitted), *cert. denied*, 142 S. Ct. 2573 (2022); *see Boyd v. McNamara,* 74 F.4th 662, 673 n.3 (2023) (the Fourteenth Amendment "is the locus of the right of a pretrial detainee to be free from excessive force and is therefore the source of the right at issue here.") "Nevertheless, the standard for excessive force is the same under either provision: whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." *Boyd*, 74 F.4th at 673 n.3 (internal quotation marks and citation omitted). Accordingly, we consider Zavala's excessive force claim

under the Fourteenth Amendment, and we resolve this claim under qualified immunity's second prong—whether the right was clearly established at the time of Harmon's alleged misconduct. *See Pearson*, 555 U.S. at 236.

This court considered the use of hog-tie restraints in *Pratt v. Harris County*, 822 F.3d 174, 182–85 (5th Cir. 2016). There, in a divided opinion, we recognized that "hog-tying is a controversial restraint," but that "we have never held that an officer's use of a hog-tie restraint is, per se, an unconstitutional use of excessive force." *Id.* at 182. To prevail on an excessive force claim, the plaintiff must still show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Zavala argues that Harmon's conduct constituted excessive force under the factors outlined in *Kingsley* and that this "clearly establishes his violation." *Kingsley* suggests that we consider, among other factors, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; . . . the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. And on the *Kingsley* factors, Harmon's use of hog-ties was not clearly a use of excessive force.

Here, Zavala's medical intake screening form indicated that "she had a history of panic attacks, anxiety, and depression, she was exhibiting inappropriate behavior and was screaming, singing loudly, at times showed some signs of being incoherent, and possible self-injurious behavior." It was also recorded that Zavala "was having suicidal ideations, had been watching Netflix about killings, and was hearing voices." By her own admission, Harmon only placed Zavala in the hog-tie restraint after she was "yelling for help" and exhibiting behavior described as inappropriate, disorderly, and self-injurious. Zavala does not allege any severe injuries, nor does she

contend that she was at risk of death from the hog-tie restraint. Her main complaints are that she was denied water while restrained, suffered minor scrapes and bruises, and has mental health issues from the incident.[3] Thus, Zavala fails to show that Harmon's conduct was unconstitutionally unreasonable or excessive under clearly established law. Further, this is not "an obvious case" where the constitutional violation would be clear "even without a body of relevant case law." *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Therefore, Harmon is entitled to qualified immunity.

## II

For the aforementioned reasons, we AFFIRM the judgment of the district court.

---

[3] As noted above, Zavala admitted to having various mental health issues prior to her arrest.